UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WILLIAM L. HUTCHINSON, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| BANK OF AMERICA, N.A. as successor by merger to LaSalle Bank N.A. as trustee for WAMU Mortgage Pass-Through Certificates Series 2006-AR17 Trust; U.S. BANK, N.A., Successor trustee to Bank of America, N.A., successor in interest to LaSalle Bank, NA, as trustee, on behalf of the holders of the WaMu Mortgage Pass Through Certificates, Series 2006-AR17; SELECT PORTFOLIO SERVICING, INC.; and DOONAN, GRAVES & LONGORIA, LLC, | ) | Civil No. 18-12443-LTS |
| Defendants. | ) | |

ORDER ON MOTIONS TO DISMISS AND REMAND (DOC. NOS. 4, 8, 22)

July 3, 2019

SOROKIN, J.

On November 15, 2018, plaintiff William L. Hutchinson brought this suit in Nantucket Superior Court, advancing a variety of claims related to the September 2018 foreclosure sale of his Nantucket property. Doc. No. 1-1. On November 26, 2018, defendants Select Portfolio Services, Inc. ("SPS"); Bank of America, N.A., as successor by merger to LaSalle Bank N.A. as trustee for WAMU Mortgage Pass-Through Certificates Series 2006-AR17 Trust and U.S. Bank, N.A., successor trustee to Bank of America, N.A., successor in interest to LaSalle Bank, N.A., as trustee, on behalf of the holders of the WaMu Mortgage Pass Through Certificates, Series 2006-

AR17 (collectively, "the Trustee"); and Doonan, Graves & Longoria, LLC ("DGL") removed the case to this Court. Doc. No. 1.

On November 27, 2018, DGL moved to dismiss themselves as a defendant, Doc. No. 4, which Hutchinson opposed, Doc. No. 7. On December 17, 2018, Hutchinson moved to remand the case to state court, Doc. No. 8, which SPS and the Trustee opposed, Doc. No. 25. Finally, on January 8, 2019, SPS and the Trustee moved to dismiss the case in its entirety, Doc. No. 22, which Hutchinson opposed, Doc. No. 28. The Court held a hearing on all three motions on May 23, 2019, and again on June 28, 2019, and all are now ripe for decision.

I. BACKGROUND[1]

Hutchinson acquired the property at 3 Skyline Drive in Nantucket by quitclaim deed executed on February 14, 1985. Doc. No. 1-1 ¶ 15; Doc. No. 9 at 30. On October 18, 2006, as part of the refinancing of the property's mortgage, Hutchinson executed a promissory note in the amount of $1,000,000 in favor of Washington Mutual Bank, F.A. ("WaMu"). Doc. No. 1-1 ¶ 17; Doc. No. 9 at 35–44. To secure the note, Hutchinson also granted WaMu a mortgage on the same date. Doc. No. 1-1 ¶ 17; Doc. No. 9 at 46–67. The mortgage was recorded in the Nantucket Country Registry of Deeds ("the Registry") on October 23, 2006. Doc. No. 1-1 ¶ 17.

On September 25, 2008, WaMu was closed by the Office of Thrift Supervision and placed into receivership by the Federal Deposit Insurance Corporation ("the FDIC"). Doc. No. 9 at 70. An affidavit filed with the Registry on October 27, 2018, stated that, as a result of WaMu's closure, "JPMorgan Chase became the owner of the loans and loan commitments of [WaMu] by

---

[1] For the purposes of this Order, the Court "accept[s] as true all well-pleaded facts set forth in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor . . . augment[ing] these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011).

2

operation of law." Id. at 69–70. In late 2009, Hutchinson stopped making payments on the mortgage. Id. at 191, 276, 335.

On April 12, 2010, JPMorgan Chase assigned the mortgage and the promissory note to Bank of America, N.A., as successor by merger to LaSalle Bank N.A. as trustee for WAMU Mortgage Pass-Through Certificates Series 2006-AR17 Trust. Doc. No. 9 at 135.

On June 29, 2010, attorney Janie Ranney wrote to Bank of America on Hutchinson's behalf, requesting information and documents about Hutchinson's mortgage. Id. at 421. Bank of America responded that it could not "identify a loan number associated with the correspondence." Id. at 428. On August 4, 2010, Ranney again wrote to Bank of America, explaining that Ranney's first letter had included the loan number. Id. at 420. On August 24, 2010, Bank of America responded again that it could not "identify a loan number associated with the correspondence." Id. at 438. On September 2, 2010, Ranney again wrote to Bank of America to inform the bank that its "failure to have such required disclosures . . . and to provide copies thereof to me upon valid request makes this loan transaction rescindable, on an unlimited basis." Id. at 417. Ranney further wrote that "you may consider this letter a formal Notice of Rescission of my client's loan." Id. Bank of America did not respond to Ranney's third letter. Doc. No. 1-1 ¶ 90.

On August 1, 2013, SPS acquired the servicing rights to the mortgage from JPMorgan Chase. Doc. No. 9 at 190. On October 30, 2017, Bank of America, N.A., as successor by merger to LaSalle Bank N.A. as trustee for WAMU Mortgage Pass-Through Certificates Series 2006-AR17 Trust assigned the mortgage to U.S. Bank, N.A., successor trustee to Bank of America, N.A., successor in interest to LaSalle Bank, N.A., as trustee, on behalf of the holders of the WaMu Mortgage Pass Through Certificates, Series 2006- AR17. Id. at 326–28.

3

On June 7, 2018, SPS sent Hutchison a "payoff statement" for his loan that indicated a total amount due of $1,453,009.79. Id. at 454. On July 26, 2018, SPS notified Hutchison that a foreclosure sale of the property was scheduled for September 6, 2018. Id. at 449.

On August 30, 2018, attorney Thomas Vawter wrote to SPS to ask them to cancel the foreclosure sale so that Hutchinson could sell the property himself. Id. at 482. Vawter wrote that, based on a projected listing price of $2,495,000, the proceeds from the sale would be more than sufficient to pay off the balance of the mortgage. Id. The letter also stated that SPS would be liable for any different between the listing price of $2,495,000 and a lower sale price in foreclosure and requested a payoff amount good through September 30, 2018. Id. SPS refused to enter into a forebearance agreement or to cancel the scheduled foreclosure sale. Doc. No. 1-1 ¶¶ 102, 103.

On September 6, 2018, the defendants held a foreclosure sale at the property. Id. ¶ 104. The bidding began when attorney Patrick Beaton of DGL bid $1,461,333.31, and ended after Greg Dorsey bid $1,700,000. Id. ¶¶ 105, 106.

Hutchinson now advances five causes of action. Count I is an action to quiet or establish the title to land under Mass. Gen. Laws ch. 240, § 6. Count II is a declaratory judgment action under Mass. Gen. Laws ch. 231, § 1. Count III is wrongful foreclosure action. Count IV is an unfair debt collection practices claim Mass. Gen. Laws ch. 93, § 49. Finally, Count V is an unfair and deceptive practices claim under Mass. Gen. Laws ch. 93A, § 9.[2]

---

[2] Although the complaint refers to both the fourth and fifth counts as "Count IV," see Doc. No. 1-1 at 19–20, the Court refers to the fourth as "Count IV" and the fifth as "Count V."

II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court must accept all factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and "threadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. A reviewing court must conduct a "context-specific" assessment of the pleadings by drawing on "its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Iqbal, 556 U.S. at 663–64). A complaint must be dismissed for failure to state a claim when it lacks "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

III.    DISCUSSION

   A.    DGL's Motion to Dismiss

DGL argues that the claims against it should be dismissed because DGL argues that it had no independent relationship with Hutchinson and therefore owed him no duty. Doc. No. 5 at 4. DGL further argues that the complaint, Doc. No. 1-1, fails to allege conduct by DGL that falls outside of the scope of DGL's attorney-client relationship with SPS and the Trustee and that, for actions it took within that scope, DGL is entitled to the immunity of litigation privilege. Id. Hutchinson argues that his allegations against DGL are based on DGL's failure "to comply

5

strictly with the provisions of the foreclosure statutes and the terms of the mortgage itself when it commenced" foreclosure proceedings. Doc. No. 7 at 3.

Under Massachusetts law, "[a] lawyer representing a lender owes no duty to the borrower." Manson v. GMAC Mortg., LLC, 283 F.R.D. 30, 42 (D. Mass. 2012). "There is only one possible exception: in certain circumstances a lawyer owes a duty of care to a nonclient who he or she knows will rely on the services rendered." Balerna v. Gilberti, 281 F.R.D. 63, 65 (D. Mass. 2012), aff'd, 708 F.3d 319 (1st Cir. 2013) (internal quotations omitted).

Hutchinson's complaint alleges that DGL filed two complaints in the Land Court that referred to the mortgage at issue. Doc. No. 1-1 ¶¶ 13, 54, 65. It also alleges that DGL never held or had possession of the original note, nor did the law firm comply with certain sections of the mortgage. Id. ¶¶ 83, 84. Finally, the complaint alleges that DGL published a notice of the foreclosure sale of the property, id. ¶ 96, Doc. No. 9 at 452, and that a DGL attorney made the opening bid at the foreclosure sale, Doc. No 1-1 ¶ 105. All these actions are plainly within DGL's role as attorney for SPS and the Trustee. Here, where Hutchinson's claims against DGL are based entirely on such actions, there is no basis on which DGL should have known that Hutchinson would rely on its services, nor any allegation that Hutchinson in fact did so. Further, Hutchinson's counsel conceded at the June 28, 2019, hearing that DGL owed Hutchinson no independent duty. Accordingly, Counts I, II, and III fail as a matter of law with respect to DGL.

With respect to Counts IV and V, none of DGL's alleged actions are unfair or deceptive with the meaning of Mass. Gen. Laws ch. 93A. "To trigger liability under 93A, courts have said that the conduct in question must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000) (internal quotations omitted). DGL's

actions, as alleged, do not rise to that level. Nor do the alleged actions include any of the actions specifically proscribed by Mass. Gen. Laws ch. 93, § 49, all of which involve communication with the borrower. Counts IV and V therefore also fail as a matter of law with respect to DGL.[3] Accordingly, the complaint fails to state a claim as to DGL, and the motion to dismiss, Doc. No. 4, is ALLOWED.

      B.      Hutchinson's Motion to Remand

Hutchinson next moves to remand this case to state court. Doc. No. 8. He argues that diversity jurisdiction does not exist because, like Hutchinson, DGL is a Massachusetts resident. Id. at 5. Accordingly, Hutchinson argues that complete diversity does not exist. Id. He further argues that, on the face of his complaint, his relief is limited to statutory costs of "hundreds of dollars" and equitable relief, thereby putting the amount in controversy far below the $75,000 jurisdictional threshold. Id. at 4.

Hutchinson's citizenship argument fails. "[U]nder the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant." Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014). Here, the claims against DGL described above plainly fail to state a cause of action, precluding any reasonable possibility that Massachusetts's highest court would find otherwise. After their dismissal, none of the remaining

---

[3] The complaint also does not allege that Hutchinson send DGL a demand letter at least 30 days prior to filing this action. Doing so and pleading so in the complaint is a "jurisdictional prerequisite" to bringing an action under Mass. Gen. Laws ch. 93A, § 9. Smith v. Jenkins, 777 F. Supp. 2d 264, 267 (D. Mass. 2011). Counts IV and V also fail as a matter of law for this independent reason.

7

defendants are citizens of Massachusetts. Doc. No. 1-1 ¶¶ 3–9. As a result, under the doctrine of fraudulent joinder, removal is not defeated by DGL's inclusion in the complaint.

Hutchinson's amount in controversy argument borders on frivolous. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977). Although the First Circuit has not settled on whether to value a given mortgage by its amount due or the amount on the face of the loan, see McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 213 (1st Cir. 2012), both are well above $75,000 in this case, see Doc. No. 9 at 35, 47, 191. Finally, in Count III, Hutchinson asserts that the defendants "intentionally deprived Mr. Hutchinson of the equity he has built up in the property," which he alleges was valued at $746,991 and for which he seeks money damages. Doc. No. 1-1 ¶¶ 120, 126. To argue in these circumstances that the amount in controversy is less than $75,000, as Hutchinson does, approaches frivolous.

Because both of Hutchinson's arguments in favor of remand fail, the motion to remand, Doc. No. 8, is DENIED.

    C.    SPS and the Trustee's Motion to Dismiss

Finally, SPS and the Trustee move to dismiss the complaint in its entirety. Doc. No. 22. They argue that Hutchinson lacks standing to bring a quiet title action under Massachusetts law and that he fails to plead sufficient facts to set forth any claim upon which relief may be granted. Doc. No. 23 at 1–2. Hutchinson rejoins that the defendants mischaracterize the facts alleged in his complaint, arguing that the complaint does include sufficient facts to plausibly entitle him to relief. Doc. No. 28.

Count I to quiet title and Count II for declaratory judgment essentially ask the Court to issue a declaration that defendants have wrongfully claimed title to Hutchinson's Nantucket property and to restore the property to Hutchinson's ownership. The complaint does not, however, contain sufficient facts to make relief on these count plausible.

Hutchinson's complaint and the documents attached thereto clearly allege that Hutchinson mortgaged his Nantucket property, stopped making payments on the mortgage, and failed to negotiate a settlement or otherwise forestall foreclosure, leading directly to defendants' foreclosure sale of the property. Hutchinson appears to advance two grounds upon which these actions could have been unlawful such that he is now entitled to equitable relief. First, he argues that he rescinded the loan in 2010 based on Bank of America's failure to provide him with certain documents. Doc. No. 1-1 ¶¶ 89–91. The Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") provides that a consumer may rescind many consumer credit transactions within three days of either (1) the transaction's consummation or (2) the disclosure by the lender of the right to rescind, whichever is later, but in no case more than four years after the transaction's consummation. Mass. Gen. Laws ch. 140D, § 10(a), (f).[4]

Attorney Ranney sent the September 2, 2010, letter far more than three days after Hutchinson's mortgage's October 23, 2006, execution. Under the MCCCDA, the letter could have rescinded the mortgage only if the originating lender or its successor had not, up until that point, provided the required disclosures to Hutchinson. However, nowhere in Hutchinson's complaint does he allege that he never received the required disclosures—neither in the text of

---

[4] Defendants' motion to dismiss addresses the federal Truth in Lending Act, 15 U.S.C. § 1635, rather than the MCCCDA. See Doc. No. 23 at 7. But Hutchinson's complaint and Ranney's letter clearly cite the MCCCDA, not the Truth in Lending Act. Doc. No. 1-1 ¶¶ 89–90, Doc. No. 9 at 417.

9

the complaint itself, Doc. No. 1-1, nor in attorney Ranney's letters, Doc. No. 9 at 416–39, nor, as far as the Court found, in any of the other lengthy exhibits attached to Hutchinson's complaint. Without that fact, Hutchinson's complaint does not "raise a right to relief above the speculative level." Twombly, 550 U.S. at 545.

Second, Hutchinson argues that the foreclosure was invalid either because SPS and the Trustee did not comply with terms of the mortgage or the relevant foreclosure statutes or because, at the time of the foreclosure, SPS and the Trustee did not hold the mortgage and note originally executed by Washington Mutual. Under Massachusetts law, a "foreclosing bank must hold both the note and the mortgage in order to have standing to sell the property at a foreclosure sale." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 156 (1st Cir. 2017). Further, the bank must "strictly comply" with the default notice provisions of the mortgage. Id. A failure on either count renders the foreclosure void. Id.

Hutchinson's complaint does, in fact, allege that SPS and the Trustee never held the note or mortgage. Doc. No. 1-1 ¶¶ 77–83, 88. It furthers alleges that SPS and the Trustee did not comply with the terms of the mortgage and the provisions of various state statutes. Id. ¶¶ 85–87. However, these allegations are "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," precisely the sort of allegation that the Court need not credit. Iqbal, 556 U.S. at 678. Contrary to those bare assertions, the specific facts alleged in Hutchinson's complaint and the documents attached thereto support the conclusion that his mortgage and note were validly assigned from Washington Mutual to JPMorgan Chase and eventually to the Trustee, see Doc. No. 9 at 69–70, 135, 326–28, and that SPS obtained the servicing rights to the mortgage, id. at 190. The Court therefore perceives no factual allegations

in the complaint plausibly supporting the conclusion that SPS and the Trustee lacked legal authority for the foreclosure sale. Accordingly, Counts I and II fail as a matter of law.

Count III alleges that SPS and the Trustee wrongfully foreclosed on Hutchinson's property by "refus[ing] to consider a fair market sale of the property" and instead insisting on a foreclosure sale that obtained a lower price. Doc. No. 1-1 ¶¶ 123–25. But Hutchinson points to no provision of law whatsoever that required defendants to allow Hutchinson to attempt a fair market sale before conducting a foreclosure sale. See Doc. No. 28 at 12–13. In support of his claim, Hutchinson points to the fact that the foreclosure sale obtained only 66 percent of the property's fair market value, Doc. No. 1-1 ¶ 122—but courts "will not invalidate a sale unless [the price] is so gross as to indicate bad faith or lack of reasonable diligence," Resolution Tr. Corp. v. Carr, 13 F.3d 425, 430 (1st Cir. 1993) (upholding a sale for 56 percent of the fair market value). Accordingly, Count III also fails.

Finally, Counts IV for unfair debt collection practices and Count V for unfair and deceptive practices both fail entirely to identify the specific acts that allegedly violated the statutes to which each count refers. Because, as described above, no act alleged by the complaint appears wrongful, it is impossible to determine on the face of the complaint what action by defendants "collect[ed] or attempt[ed] to collect . . . debt in an unfair, deceptive or unreasonable manner." Mass. Gen. Laws ch. 93, § 49. The complaint similarly fails to specify which acts were "unfair or deceptive." Mass. Gen. Laws ch. 93A, § 9. Neither the complaint itself nor Hutchinson's opposition to the motion to dismiss attempts to point to such specific acts. It therefore "fails . . . to give notice to defendants regarding the discrete acts [Hutchinson] alleges were unfair or deceptive within the penumbra of some concept of unfairness or deceptiveness."

Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013) (citations and internal quotations omitted). Both counts therefore fail.

IV. CONCLUSION

For the foregoing reasons, both pending motions to dismiss, Doc. Nos. 4, 22, are ALLOWED. The motion to remand, Doc. No. 8, is DENIED. The clerk shall enter judgment in favor of defendants and against Hutchinson on all claims, pursuant to this Order, with each side to bear its own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge